**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| STEVE J. NEMO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No:2:05CV926-T |
| | ) | |
| TITLEMAX d/b/a U.S. TITLE | ) | |
| PAWN, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff alleges discrimination and retaliation under Title VII and 42 U.S.C. § 1981. Plaintiff also asserts state law claims of negligent supervision and training, negligent retention, and negligence. Based on the undisputed material facts, Defendant is entitled to a judgment in its favor as a matter of law on all claims.

Plaintiff alleges that, upon being promoted to Store Manager, he was paid a lower wage than Caucasian managers, was later denied a pay raise to a salary higher than the one provided by the Company, was not assigned an Assistant Manager, and was demoted due to his race. These allegations are not supported by the record. The undisputed material facts reveal that Plaintiff: 1) was paid comparably to other managers, including Caucasian managers; 2) was denied a pay raise because he was already being paid commensurate with his qualifications; 3) was not assigned an Assistant Manager because his store's volume did not justify such assignment; and 4) was ultimately

demoted to receive more training because his store had a high number of past due accounts, his store had an extremely high "charge off" the prior month, his store was not making the profit that Defendant expected, he was not field chasing accounts properly, Defendant had received numerous customer complaints about Plaintiff, and Plaintiff's overall operation of the store was poor.

Plaintiff's disparate treatment claims must be dismissed because: (1) Plaintiff cannot establish a *prima facie* claim of race discrimination in violation of Title VII or § 1981; (2) Defendant has stated legitimate, nondiscriminatory reasons for its actions regarding Plaintiff; (3) Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reasons are a pretext for race discrimination; and (4) Plaintiff's Title VII disparate treatment claims based on conduct other than Plaintiff's demotion fail as a matter of law because they were not the subject of a timely filed EEOC charge.

Plaintiff arguably alleges in his Amended Complaint that he was subjected to a racially hostile work environment.  However, Plaintiff has not proffered any race-based conduct on the part of Defendant sufficiently severe and pervasive so as to alter the terms and conditions of his employment.  Further, Plaintiff admits that Defendant had an anti-harassment policy and a reporting procedure by which he could advance complaints directly to the Chief Executive's office.  He admits he never used this procedure to complain about any alleged racial harassment or racial discrimination during his employment. Thus, he failed to take advantage of procedures reasonably calculated by the employer to avoid such harm.  Moreover, to the extent Plaintiff asserts a claim of hostile work environment under Title VII, such claim fails as a matter of law because it was not the subject of a timely filed EEOC charge.  Accordingly, Plaintiff's hostile work environment claims should be dismissed.

Plaintiff bases his retaliation claims on two distinct incidents, neither of which affected the terms and conditions of his employment. First, Plaintiff alleges that, because Plaintiff had filed a lawsuit against the Company, Regional Manager Dave Deal chastised Plaintiff's manager for sending out an e-mail expressing concern for Plaintiff's health condition. Plaintiff also alleges that his manager, David Cox, told him that if he dropped his lawsuit the Company might make him a manager, notwithstanding the fact that Cox had no authority to promote Plaintiff. Plaintiff's retaliation claims should, therefore, be dismissed because Plaintiff cannot prove that he suffered any adverse employment action as a result of any protected activity on his part. In any event, any claim by Plaintiff for back pay should be dismissed because Plaintiff did not want to be promoted back to Store Manager and refused to take the steps necessary to be promoted. Moreover, Plaintiff's Title VII retaliation claim should be dismissed because it was not the subject of a timely filed EEOC charge.

Finally, Plaintiff's state law claims of negligent supervision and training, negligent retention, and negligence should be dismissed as a matter of law. As an initial matter, such claims are barred by the exclusive remedy provision of the Alabama Workers' Compensation Act. In any event, the claims fail because Plaintiff cannot prove that Defendant breached any duty of care that it allegedly owed to Plaintiff.

## SUMMARY JUDGMENT STANDARD

Summary judgment, which is designed to "isolate and dispose of" factually unsupported claims, must be granted where the record evidence, including the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment in its favor

as a matter of law.  Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Not every factual dispute between the parties

will prevent summary judgment.  The disputed facts must be material and must be facts which, under

the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Once a defendant moves for summary judgment, the plaintiff may not rest on conclusory

allegations or denials in the pleadings or rumors and subjective beliefs. Fed. R. Civ. P. 56(e); *Leigh*

*v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  Neither the mere existence of some

alleged factual dispute nor the existence of "some metaphysical doubt as to the material facts" is

sufficient to avoid summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  Similarly, the plaintiff cannot rely

on speculation in order to defeat a summary judgment motion. *Celotex*, 477 U.S. at 324.  Rather,

a plaintiff must tender cold, hard facts that establish a necessary and genuine issue for trial. *Id.*  "A

complete failure of proof on an essential element of the non-moving party's case necessarily renders

all other facts immaterial." *Id.* at 323.

In cases of employment discrimination, judgment as a matter of law for the employer is

appropriate if the plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a

factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *See*

*Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997).

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.    Plaintiff is employed by TitleMax of Alabama, Inc. ("TitleMax"). (Plaintiff's

---

[1]    Referenced in the Argument Section below as "SOF."

Amended Complaint, ¶ 6; Declaration of Dave Deal, ¶ 3). TitleMax is an Alabama corporation that is engaged in the title pawn business. (Declaration of Dave Deal, ¶ 2).[2]

2.      Plaintiff began his employment with TitleMax in or about February 2002 as an Assistant Manager earning a salary of $20,800. (Plaintiff's Amended Complaint, ¶¶ 9-10; Plaintiff's deposition transcript ("Plaintiff's dep."), pp. 76-77, 94-95).[3]

3.      Store Manager Dan Cain was solely responsible for hiring Plaintiff. (Plaintiff's dep., pp. 103-104). Mr. Cain set Plaintiff's rate of pay at the time of Plaintiff's hire. (Plaintiff's dep., pp. 74-77, 94). Plaintiff had just lost a job, and it did not make a difference what he was going to be paid -- he had to accept it. (*Id.*). After the TitleMax job offer was made, Plaintiff quit looking for employment. (*Id.*).

4.      After Plaintiff was hired, he received training on how to do his job by Store Manager Dan Cain. (Plaintiff's dep., pp. 78-84). This consisted of training on how to appraise cars, the paperwork associated with the business, the use of Company computer software, verifying loan titles, as well as other training. (*Id.*). The training period lasted about 30 days. (*Id.*).

5.      Plaintiff testified that his prior employment experience was not sufficient training for the TitleMax position and that he had to receive Mr. Cain's training in order to do his job effectively. (Plaintiff's dep., pp. 261-62). Following the initial training, Plaintiff received additional training every two weeks during store audits that were conducted by the District Manager. (Plaintiff's dep., 267-68).

---

[2]      The Declaration of Dave Deal is attached hereto as Exhibit 1.

[3]      The referenced portions of Plaintiff's deposition transcript are attached hereto collectively as Exhibit 2.

6.      Plaintiff had no problems with his first manager, Mr. Cain, and had no complaints of racial discrimination under Mr. Cain. (Plaintiff's dep., pp. 87-89).

7.      Plaintiff's next manager was Michael Knight. (Plaintiff's dep., p. 89). Plaintiff had no problems with Mr. Knight; Plaintiff and Mr. Knight had a friendly relationship, and Plaintiff never made any complaints about Mr. Knight. (Plaintiff's dep., pp. 90-91).

8.      Plaintiff was then moved to a store run by Dan Taylor. (Plaintiff's dep., pp. 91-92). During the time that he worked under Mr. Taylor's supervision, Plaintiff's salary was raised from $20,800 annually to $22,001 annually. (Plaintiff's dep., pp. 93-95). The raise occurred approximately 6 months after the start of his employment with TitleMax. (Plaintiff's dep., p. 94). The manager above Mr. Taylor at the time of Plaintiff's raise was Dave Deal, whose title then was District Manager. (Plaintiff's dep., p. 92).

9.      While working as an Assistant Manager under Mr. Taylor's supervision, the store never had an unprofitable month. (Plaintiff's dep., p. 108). The profitability of the store was dependent on the store's revenues, expenses and "charge offs," which are uncollectible debts owed by the customer. (Plaintiff's dep., pp. 109-10).

10.     Plaintiff testified that he did not have any problems with racial discrimination during the time that he was an Assistant Manager under Mr. Taylor's supervision. (Plaintiff's dep., p. 111-12).

11.     Plaintiff then worked briefly under the supervision of Shane Callahan, a Caucasian Store Manager. (Plaintiff's dep., p. 115-17). Mr. Callahan had replaced Mr. Taylor who had been transferred to a new store that had just opened. (Plaintiff's dep., pp. 115-16).

12.     On September 23, 2003, Plaintiff was promoted to Store Manager of the Fairview

store in Montgomery, Alabama, and his base salary was placed at $26,001 annually. (Plaintiff's Amended Complaint, ¶¶ 22-23; Plaintiff's dep., pp. 113-14). Plaintiff was promoted by District Manager Jim Berry after Berry received approval for the promotion by Regional Manager Dave Deal, who had been promoted from District Manager to Regional Manager. (Plaintiff's dep., pp. 114, 118, 131). Plaintiff's salary was set at an amount commensurate with Plaintiff's qualifications. (Declaration of Dave Deal, ¶ 4).

13.    Less than six (6) months prior to his promotion, Plaintiff and Mr. Berry had discussed the possibility of Plaintiff's becoming a Store Manager. (Plaintiff's dep., pp. 119-21).

14.    In his new position, Plaintiff, in addition to his base salary, received reimbursement for insurance of $200 a month, if he showed proof of medical insurance, and $40 a month for telephone plan reimbursement. (Plaintiff's dep., pp. 127-29). Therefore, the total compensation package for Plaintiff as a Store Manager was $28,881 a year. (Plaintiff's dep., pp. 127-129). There was also a potential for a bonus if the store became profitable. (Plaintiff's dep., p. 127).

15.    Shortly after he was promoted to Store Manager of the Fairview store, Plaintiff requested that his new salary be set at $30,000, approximately $8,000 above what he was making as an Assistant Manager. (Plaintiff's dep., pp. 133-35). Plaintiff made this request as a result of a conversation Plaintiff claims he had with a Caucasian manager of another store who stated that he was earning $30,000 annually. (Plaintiff's dep., pp. 136-40). Instead, Plaintiff's salary was raised to $26,001 with benefits as discussed above. (Plaintiff's dep., pp. 113-14, 127-29; Declaration of Dave Deal, ¶ 4).

16.    After Plaintiff became a Store Manager, he accessed an Excel spreadsheet document that was attached to an e-mail addressed to his District Manager that showed the salaries of

managers in his district in and around late 2003. (Plaintiff's dep., pp. 141-42, 216-21, Ex. 1). In addition, he looked at an email addressed to his District Manager which showed what a new potential hire, Gray Hare, a Caucasian male, was to make as a Store Manager when he came on board. (Plaintiff's dep., p. 143).

17.     Plaintiff acknowledges that, at the time, African American managers also received higher starting salaries than he received in that some received a starting annualized salary of $30,000. (Plaintiff's dep., pp. 144-48). During this time, Dave Deal was the Regional Manager responsible for the district in which Plaintiff was employed (District 5), and the District Manager was Jim Berry. (Plaintiff's dep., pp. 147-148).

18.     For example, Henry Easley, an African American manager who was employed in District 5, earned a starting salary of $30,000 a year. (Plaintiff's dep., pp. 145-147, Ex. 1; Declaration of Dave Deal, ¶¶ 6-7, Ex. A).

19.     Plaintiff identified an African-American Store Manager, Wanda Asberry, who had a higher starting salary as Store Manager than Plaintiff. (Plaintiff's dep., pp. 222-23, Ex. 1). Plaintiff testified that Asberry, who served as an Assistant Manager at about the same time he was hired, was ultimately promoted to District Manager. (Plaintiff's dep., pp. 98-100; Declaration of Dave Deal, ¶ 8). Mr. Deal was the decision maker in regard to Ms. Asberry's promotions. (Declaration of Dave Deal, ¶ 8).

20.     Jermaine McCall, an African American Store Manager, also had a higher starting salary than Plaintiff. (Plaintiff's dep., p. 223, Ex. 1; Declaration of Dave Deal, ¶ 9, Ex. A).

21.      Plaintiff also identified Hillard Williams, an African American Store Manager, who started as Store Manager at the $30,000 salary that Plaintiff desired. (Plaintiff's dep., p. 225, Ex. 1;

Declaration of Dave Deal, ¶ 10, Ex. A).

22.    Plaintiff identified Jackey Medley, a Caucasian Store Manager in District 5, who was paid the same starting salary as a Store Manager that Plaintiff received. (Plaintiff's dep., pp. 221-22, Ex. 1; Declaration of Dave Deal, ¶ 6, Ex. A).

23.    Plaintiff affirmed that manager Jack Bozeman, a Caucasian Store Manager, started at the same salary as Plaintiff as an Assistant Manager, received the same raise as Plaintiff to $22,880 annually after this hire, and then was promoted to Store Manager at $26,001 annually, the starting salary Plaintiff received as a Store Manager. (Plaintiff's dep., pp. 226-30; Declaration of Dave Deal, ¶ 6, Ex. A).

24.    Bozeman had expressed to Plaintiff his own concerns about not being paid comparably with others in the district as well.  (Plaintiff's dep, pp. 227-28).

25.    Michael J. Fraebel, a Caucasian Store Manager in District 5, was paid the same starting salary as a Store Manager that Plaintiff received. (Declaration of Dave Deal, ¶ 6, Ex. A).

26.    Burney Atcher, a Caucasian Store Manager in District 9, which also was under Dave Deal's supervision in 2003, was paid the same starting salary as a Store Manager that Plaintiff received. (Declaration of Dave Deal, ¶ 6, Ex. A).

27.    Leon Clark, a Caucasian Store Manager in District 9, which also was under Dave Deal's supervision in 2003, was paid the same starting salary as a Store Manager that Plaintiff received. (Declaration of Dave Deal, ¶ 6, Ex. A).

28.    James Jaynes, a Caucasian Store Manager in District 9, which also was under Dave Deal's supervision in 2003, was paid the same starting salary as a Store Manager that Plaintiff received. (Declaration of Dave Deal, ¶ 6, Ex. A).

29.    Plaintiff agreed that both African American and Caucasian Store Managers received higher salaries than he, both receiving salaries in the range of $28,000 - $30,000. (Plaintiff's dep., pp. 229-30).

30.    Plaintiff never complained to any management official that he believed the pay disparity he perceived among Store Managers was based on race. (Plaintiff's dep., p. 165).

31.    While employed as Store Manager, Plaintiff was counseled by Jim Berry for favoring certain customers over others and violating Company policy. (Plaintiff's dep., pp. 170-71, Ex. 2). Plaintiff received a written Employee Warning Notice for modifying Company policy to accommodate personal interest in that Berry suspected that Plaintiff had advised certain customers that they need not worry about being on time when paying on their accounts. (Plaintiff's dep., pp. 170-171, Ex. 2).

32.    In addition, Plaintiff was counseled by Mr. Berry about a customer complaint in which the customer accused Plaintiff of making a threat to "repo" the customer's car. (Plaintiff's dep., p. 173).

33.    Plaintiff was also counseled by District Manager Michael Knight, after Mr. Knight took over the supervision of Plaintiff's store from Mr. Berry, for having cursed and been rude to a customer. (Plaintiff's dep., p. 174-75).

34.    After 6 months at the Fairview location as Store Manager, Plaintiff was transferred to the Prattville store. (Plaintiff's dep., pp. 149-50). The transfer was made because Prattville was closer to Plaintiff's home, and Plaintiff wanted the transfer. (Plaintiff's dep., pp. 149-50).

35.    Plaintiff was never assigned an Assistant Manager at his store because Defendant's stores typically are not assigned an Assistant Manager until the store's receivables exceed

-10-

approximately $120,000[4], and the highest amount of receivables that Plaintiff accrued was $107,000 at the Prattville store. (Declaration of Dave Deal, ¶ 11).

36.    Although Plaintiff was not assigned an Assistant Manager, he was provided with help. (Plaintiff's dep., pp. 57-60). Most mornings an Assistant Manager from another store would go to Plaintiff's store to do Plaintiff's daily deposits. (Declaration of Dave Deal, ¶ 12).  While the Assistant Manager was there, he was available to Plaintiff if Plaintiff needed any help chasing down accounts for that day. (Plaintiff's dep., pp. 57-60; Declaration of Dave Deal, ¶ 12). Moreover, Dave Deal instructed Plaintiff to call the other Prattville store if he needed any help at any time, and, if that didn't work, to call Michael Knight, who would get him help. (Declaration of Dave Deal, ¶ 12).


37.    During the 12 months that Plaintiff was a Store Manager, he never received a bonus. (Plaintiff's dep., p. 176-78).  This was due to the fact that Plaintiff's stores never returned a profit. (Plaintiff's dep., p. 178).

38.    During the period that Plaintiff was a Store Manager, both at the Fairview store and the Prattville store, to which Plaintiff was later transferred as he desired, there was never a month that a store he managed was profitable.  (Plaintiff's dep., pp. 130-31; Declaration of Dave Deal, ¶ 14, Ex. B).  Plaintiff admits that the stores always lost money except in September 2004, in which Plaintiff stated at his deposition he believed a profit was made. (Plaintiff's dep., pp. 130-131).[5]

---

[4]    The assignment of an Assistant Manager can also be impacted by lack of available employees to assign to a position and unexpected events affecting the Company's ability to staff a store properly.  (Declaration of Dave Deal, ¶ 11).

[5]    As noted below, any purported profit made by the store in September 2004 would not be attributed to Plaintiff because he was demoted on September 7, 2004.  The last full month that Plaintiff was a manager, the store he managed had a negative profit of $2,627.  (Declaration

39.    Plaintiff was demoted from Store Manager to Assistant Manager on September 7, 2004. (Plaintiff's dep., pp. 176-77; Declaration of Dave Deal, ¶ 15).

40.    Plaintiff was demoted to receive more training because his store had a high number of past due accounts, his store had an extremely high "charge off" the prior month, his store was not making the profit that Defendant expected, he was not field chasing accounts properly, Defendant had received numerous customer complaints about Plaintiff, and Plaintiff's overall operation of the store was poor. (Declaration of Dave Deal, ¶¶ 16, 19-24).

41.    At the time Michael Knight advised Plaintiff that he was being demoted, Plaintiff testified that Knight told him that it was being done so he could receive more training. (Plaintiff's dep., p. 176-77).  When Plaintiff questioned him about the demotion, Dave Deal advised Plaintiff that he needed to make some changes in the store. (Plaintiff's dep., p. 180).  Plaintiff was never advised that he was demoted due solely to "slow files."  (Plaintiff's dep., p. 257).

42.    It was Defendant's normal practice to demote certain Store Managers who were not performing adequately to Assistant Manager to enable them to receive additional training. (Declaration of Dave Deal, ¶ 17).  In most instances, the Assistant Managers were then promoted back to Store Manager after a short period of time following this additional training. (Declaration of Dave Deal, ¶ 17).

43.    Plaintiff is aware of three other Store Managers who were demoted to Assistant Manager. (Plaintiff's dep., pp. 46-47, 52-55, 181).  Two of the Store Managers demoted were Caucasian and one was African American. (*Id.*).

44.    Plaintiff filed a Charge of Discrimination with the EEOC on September 27, 2004

of Dave Deal, ¶¶ 14, 24, Ex. B).

alleging only that his demotion was based on his race.  (Plaintiff's dep., Ex. 8; Plaintiff's EEOC

Charge; Plaintiff's EEOC Case Log).[6]

45.    Plaintiff acknowledged that the two decision makers with respect to his demotion,

Michael Knight and Dave Deal, never made any racial slurs to his knowledge.  (Plaintiff's dep., pp.

271-72).  Mr. Deal had earlier been involved in the decision to promote Plaintiff to Store Manager.

(Plaintiff's dep., pp. 114, 118, 131; Declaration of Dave Deal, ¶ 4).

46.    After the demotion, Plaintiff's salary was retained at $26,001 annually, but he lost

initially the $200 monthly insurance reimbursement, which was later restored after Plaintiff reached

one year of service with the Company service in accordance with Company policy, and the $40

phone service reimbursement.   (Plaintiff's dep., pp. 179-80; Declaration of Dave Deal, ¶ 25).

However, it was understood that the $40 monthly for the telephone reimbursement was only for

managers for the use of a cell phone on Company business. (Plaintiff's dep., pp. 277-78). When he

was demoted, he lost the $40 monthly, but he also was not required to, and did not, use a cell phone

for Company business. (Plaintiff's dep., pp. 277-78; Declaration of Dave Deal, ¶ 25).

47.    After he was demoted, Plaintiff was transferred  to another store managed by David

Cox in Prattville less than one mile away. (Plaintiff's dep., pp. 171, 181-84).  Cox never said

anything racially derogatory to Plaintiff, but Plaintiff heard, after his transfer, that Cox had, before

Plaintiff's demotion, used the "N" word  and, near the same time, had said that he "hoped that black

S.O.B. fails."  (Plaintiff's dep., p.183-85).[7]

---

[6]       Plaintiff's EEOC Charge and EEOC Case Log are attached hereto collectively as
Exhibit 3.

[7]       Although Plaintiff initially testified that Cox never used the "N" word in front of
him, later in his deposition he contradicted this testimony claiming that there "were a few

48.     Cox's alleged statement was communicated to Plaintiff by Jack Bozeman in a clandestine meeting after Plaintiff had been demoted. (Plaintiff's dep., pp. 186-88).  Bozeman stated that the alleged statement was said by Cox to someone on the phone whom Bozeman believed was District Manager Jim Berry. (Plaintiff's dep., p. 185).  The alleged conversation related by Bozeman occurred when Nemo was still a Store Manager, prior to his demotion, and during the period that Jim Berry was the District Manager responsible for Plaintiff's store.  (Plaintiff's dep., pp. 185-86). The conversation, therefore, was at least 9 months before Plaintiff's demotion since Jim Berry became responsible for another district in January 2004, and Michael Knight took over for him. (Declaration of Dave Deal, ¶ 13).

49.     Neither Berry nor Cox were involved in the decision to demote Plaintiff. (Plaintiff's dep., pp. 176-80; Declaration of Dave Deal, ¶ 18).  Mr. Cox was a Store Manager at the time of his alleged statement to Jim Berry. (Plaintiff's dep., pp. 196-97).  As a Store Manager, Cox did not have the authority to make any demotions, and at the time of his alleged statement, he held a position lateral with Plaintiff's. (Plaintiff's dep., pp. 196-97).

50.     After a few months working as an Assistant Manager at the Prattville store, Plaintiff requested a transfer. (Plaintiff's dep., pp. 204-05).  Plaintiff was granted a transfer to Jack Bozeman's store sometime thereafter. (Plaintiff's dep., pp. 204-06).

51.     Plaintiff claims one of the reasons he requested a transfer was that Cox used the "N" word while he worked for Cox. (Plaintiff's dep., pp. 203-04).  Plaintiff acknowledges that he never made a complaint to the EEOC regarding Cox's alleged statements. (Plaintiff's dep., pp. 286).

---

occasions where" Cox used the "N" word in front of him. (Plaintiff's dep., pp. 203-04).  Plaintiff acknowledged that the first time he mentioned this to anyone was at his deposition.  (Plaintiff's dep., pp. 285-86).

Plaintiff made no effort to advise the Chief Executive Officer of the Company that Cox had used such language and, in fact, the first time he had ever made such allegations was at the deposition. (Plaintiff's dep., p. 252, 286).

52.    Mr. Bozeman has been Plaintiff's manager since Plaintiff's demotion and subsequent transfer to Bozeman's store. (Plaintiff's dep., pp. 190-91).    Plaintiff is comfortable with his relationship with Bozeman, his current supervisor.  (*Id.*).

53.    After his demotion, Plaintiff, in December 2005, was asked to fill out an Assistant Manager's questionnaire, which was described by Plaintiff as the questionnaire filled out by Assistant Managers to qualify for profit sharing bonuses. (Plaintiff's dep., p. 206-08).  Plaintiff refused to complete the questionnaire. (Plaintiff's dep., pp. 207-08).  Plaintiff acknowledged that he could not be promoted without completing the questionnaire. (Plaintiff's dep., p. 208).  Plaintiff acknowledged that this questionnaire is required for both African American and Caucasian Assistant Managers, and that this requirement is not  discriminatory on the basis of race. (Plaintiff's dep., pp. 212-213). Moreover, about this time Plaintiff told a co-worker. Gilbert Redd, that he did not want to be promoted back to Store Manager. (Declaration of Gilbert Redd, ¶¶ 1-5).[8]

54.    Plaintiff acknowledged that he understood that Company policy allowed him to go directly to the Chief Executive Officer to air a complaint of racial discrimination, but he never did so and made no such effort to get corrective action. (Plaintiff's dep., pp. 251-54; Declaration of Dave Deal, ¶ 26).

55.    Plaintiff states that his retaliation claim is based on a situation in which Jack Bozeman, his manager, sent out an email saying that our prayers and thoughts should go out to Mr.

---

[8]        The Declaration of Gilbert Redd is attached hereto as Exhibit 4.

Nemo concerning his medical condition. (Plaintiff's dep., pp. 273-76). Plaintiff claims that Bozeman then received a telephone call from Dave Deal telling him that Stephen Nemo has the Company in a lawsuit and we should never give him that kind of attention.[9] (*Id.*). Plaintiff acknowledged that this statement did not have any impact on any of his pay benefits or other terms and conditions of his employment. (Plaintiff's dep., pp. 274-275). Plaintiff also claims he was retaliated against when David Cox, who was then his manager, stated to him that perhaps if he dropped the lawsuit the Company might make him a manager. (Plaintiff's dep., pp. 275-76). However, Plaintiff acknowledged that Mr. Cox did not have the power to make decisions on promotions. (Plaintiff's dep., p. 276).

## ARGUMENT

I.   **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S DISPARATE TREATMENT CLAIMS UNDER TITLE VII AND SECTION 1981.**

A.   **Allocation and Order of Proof.**

Claims under Title VII and 42 U.S.C. § 1981 have the same requirements of proof and use the same analytical framework. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000); *Standard v. A.B.E.L. Services, Inc*, 161 F.3d 1318, 1330 (11th Cir. 1998). Where, as here, there is no direct[10] or statistical evidence of discrimination, Plaintiff must prove his allegations of intentional discrimination based on the allocation and order of proof first articulated in *McDonnell*

---

[9]     At trial, this alleged would be contested but it will be assumed to be true for summary judgment purposes only.

[10]    Plaintiff admits that he never heard any of the decision makers at issue make any racial comments (SOF 45), much less any remarks "whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).

*Douglas v. Green*, 411 U.S. 792 (1973).  *See EEOC v. Joe's Crab Shack*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Under the *McDonnell Douglas* framework, Plaintiff first must establish a *prima facie* case. *Id*; *Vessels vs. Atlanta Independent School Sys*., 408 F.3d 763, 767 (11th Cir. 2005). If Plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *Holifield*, 115 F.3d at 1564, citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).   If Defendant produces such a reason, Plaintiff has the ultimate burden to prove that the reason offered is a pretext for unlawful discrimination.  *Holifield,* 115 F.3d 1565.

These cases make it clear that "a . .. plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576 (1978).

Only if the plaintiff succeeds in first establishing a *prima facie* case does the burden of articulation then shift to the defendant.  "[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" *Burdine*, 450 U.S. at 256, *quoting Board of Trustees of Keene State College v. Sweeny*, 439 U.S. 24, 25 n.2 (1978).  Or, as the Supreme Court stated in *Hicks*, the employer need only "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 590 (1993)  The defendant is not required to prove the absence of discriminatory motive.  *Sweeny*, 439 U.S. at 24.

Once the employer has met this burden, the plaintiff bears the burden of proving that he was

a victim of proscribed, intentional discrimination.  *Hicks*, 509 U.S. at 512, n.4.  To avoid summary judgment on the ultimate issue, a Title VII plaintiff must produce some objective evidence that the employer's asserted reason is a mere pretext for unlawful discrimination. *Id*.  To do so, he must come forward with evidence " ... sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 quoting *Burdine*, 450 U.S. at 254; *see also, Silvera v. Orange County Sch. Bd.*, 244 F3d 1253,1262 (11th Cir. 2001)(Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.").  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Hicks*, 509 U.S. at 517, *quoting Burdine*, 450 U.S. at 253.  Thus, if Plaintiff cannot present some affirmative evidence of proscribed, intentional discrimination – and his deposition testimony clearly establishes that he cannot – his claims cannot survive summary judgment.

      **B.**    **Plaintiff's Claims of Disparate Treatment Under Title VII and Section 1981 Based on An Alleged Pay Disparity Between Him and Caucasian Store Managers Upon His Being Promoted Fail As A Matter of Law.**

           **1.**    **Plaintiff's Title VII Disparate Treatment Claim Based on Alleged Pay Disparity is Barred Because It Was Not The Subject of a Timely Filed EEOC Charge.**

                **a.**    **Title VII Pay Disparity Claim in Regard to Store Managers Is Outside Scope of Plaintiff's EEOC Charge.**

Plaintiff's Title VII disparate treatment claim based on alleged pay disparity fails as a matter of law because such claim was not the subject of a timely filed EEOC charge.  The Eleventh Circuit has held that a plaintiff's judicial complaint under Title VII is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

*Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994)(holding that a claim of unequal pay is not the equivalent of a claim alleging failure to promote). Here, Plaintiff's EEOC charge was based solely on Defendant's decision to demote Plaintiff. (SOF 44). Thus, Plaintiff's EEOC charge and the resulting investigation regarding Plaintiff's demotion would not trigger an inquiry into Defendant's pay practices with respect to the starting salaries for Store Managers. *Mulhall*, 19 F.3d at 589 n.8. Accordingly, Plaintiff's Title VII pay disparity claim should be dismissed.

> **b.    Title VII Pay Disparity Claim in Regard to Store Managers is Time Barred.**

Even if the Court were to determine that Plaintiff's EEOC charge would have triggered an inquiry into Defendant's pay practices with respect to starting salaries for Store Managers, Plaintiff's Title VII disparate treatment claim based on alleged pay disparity still fails as a matter of law because Plaintiff's EEOC charge was not timely. Under Section 706 of Title VII, only those unlawful employment practices that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability. *City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002). For claims arising in so-called "non-deferral" states, such as Alabama, to be timely, the applicable charge must have been filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (2006).

Here, Plaintiff claims disparate treatment with respect to alleged pay disparity that occurred on September 23, 2003, when Plaintiff was promoted to Store Manager. (SOF 12, 44). Plaintiff's EEOC charge was filed on September 27, 2004, well more that 180 days after the employment practice that Plaintiff claims was unlawful. (SOF 44). Thus, Plaintiff's Title VII disparate treatment claim with respect to alleged pay disparity with respect to starting salaries for Store Mangers is time barred. *See Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1183-84 (11th Cir.

2005).

### 2. In any Event, Plaintiff Cannot Establish A *Prima Facie* Case With Respect to His Pay Disparity Claims Under Title VII or Section 1981.

Plaintiff claims that he suffered disparate treatment based on his race because, at the time he was promoted to Store Manager, he alleges he was earning less than the starting salaries of other Caucasian Store Managers. Plaintiff bases his claim on an alleged statement made to him at the time he was promoted by another Store Manager that Plaintiff was not earning as much as the other managers. (SOF 15). He also bases his claim on a document which he improperly accessed on his District Manager's computer which set forth the starting salaries of Store Managers in the district in which Plaintiff was employed. (SOF 16). This document, and Plaintiff's deposition testimony reveal, however, that both Caucasian and African American Store Managers received starting salaries higher than Plaintiff's. (SOF 17-21, 29). Moreover, at least six Caucasian Store Managers received a starting salary equal to Plaintiff's starting salary. (SOF 22-28).

To state a *prima facie* case of intentional discrimination in compensation, a plaintiff must establish that: 1) he belongs to a racial minority; 2) he received low wages; 3) similarly situated comparators outside the protected class received higher compensation; and 4) he was qualified to receive the higher wage. *Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004). Here, Plaintiff cannot establish a *prima facie* case because he cannot show that he received low wages, or that he was qualified to receive the higher wage. As noted above, Plaintiff cannot prove that he received a low wage because it is undisputed that at least six Caucasian Store Managers received the same starting wage. (SOF 22-28). Moreover, Plaintiff cannot prove that he was qualified for a higher wage because it is clear that Plaintiff was paid a starting salary commensurate with his qualifications. (SOF 12). Since Plaintiff cannot establish a *prima facie* case, his disparate treatment

claims under Title VII and Section 1981 based on alleged pay disparity fail as a matter of law.

> **3.      Even if Plaintiff Could Establish a *Prima Facie* Case With Respect to His Pay Disparity Claims under Title VII or Section 1981, Defendant Has A Articulated Legitimate, Non-Discriminatory Reason For the Employment Decision That Plaintiff Cannot Prove Is Pretext For Discrimination.**

Even if Plaintiff were able to prove a *prima facie* case of disparate treatment race discrimination base on his starting salary as a Store Manager, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's starting salary that he cannot prove to be pretext for discrimination. Specifically, Plaintiff was paid an amount commensurate with his qualifications within a pay range established for all Store Managers (SOF 12).

There is no evidence to suggest that the starting salary he was paid as compared to other Store Managers was due to unlawful discrimination. He cannot demonstrate that Defendant's reasons for setting Plaintiff's salary at that amount were false, or otherwise show that race discrimination motivated the salary structure. *Cooper v. Southern Co.*, 390 F.3d 695, 736 (11th Cir. 2004). Indeed, the undisputed material facts reveal that both Caucasian and African American Store Managers received higher starting salaries than Plaintiff. (SOF 17-21, 29). Moreover, at least six Caucasian Store Manager received the same starting salary as a Store Manager that Plaintiff received. (SOF 22-28). These facts are fatal to Plaintiff's pretext argument. *See Cooper*, 390 F.3d at 736; *Warren v. Blockbuster Music*, 1997 WL 47780 *4 (E.D. La.1997)("[A]s a matter of law, the simple fact that white employees received a higher salary than plaintiff does not establish wage discrimination."). Further, it is undisputed that Plaintiff never excelled as a Store Manager in view of the fact that none of his stores ever turned a profit. (SOF 37-38). Thus, Plaintiff's claims fail as a matter of law.

C.    **Plaintiff's Claims of Disparate Treatment Under Title VII and Section 1981 Based on Defendant's Denial of Plaintiff's Request for a Pay Raise Fail As A Matter of Law.**

      1.    **Plaintiff's Title VII Disparate Treatment Claim Based on Defendant's Denial of Plaintiff's Request for a Pay Raise is Barred Because It Was Not The Subject of a Timely Filed EEOC Charge.**

As noted with respect Plaintiff's Title VII disparate treatment claim based on alleged pay disparity above in Section I.B.1, Plaintiff's Title VII disparate treatment claim based on denial of a pay raise is also barred because it was not the subject of a timely filed EEOC charge. Such a claim is clearly outside the scope of Plaintiff's EEOC charge, which only addressed Plaintiff's demotion. In any event, any such claim would be now be time barred because the denial of Plaintiff's request for a raise occurred in or about September 2003 (SOF 12, 15), well more than 180 days prior to the filing of Plaintiff's EEOC charge. (SOF 44). Accordingly, Plaintiff's Title VII disparate treatment claim based on the denial of Plaintiff's request for a raise fails as a matter of law.

      2.    **In any Event, Plaintiff Cannot Establish A *Prima Facie* Case With Respect to His Denial of a Pay Raise Claims Under Title VII or Section 1981.**

To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified for the job or benefit at issue. *Burke-Fowler v. Orange County, Fla.*, 2006 WL 1222357 at *2 (11th Cir. 2006); *Camara v. Brinker Int'l*, 161 Fed. Appx. 893, 896 (11th Cir. 2006); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Here, Plaintiff cannot establish a *prima facie* case with respect to the denial of his request

-22-

for a pay raise because he cannot show that similarly situated non-protected employees were treated more favorably, or that he qualified for a raise. Plaintiff has not, and cannot, identify any Caucasian Store Manager who requested a pay raise shortly after becoming a Store Manager and received it. Likewise, Plaintiff cannot show that he was qualified for the raise he requested because Defendant had set his starting salary as a Store Manager at an amount commensurate with his qualifications, and Plaintiff had been serving as a Store Manager for only a short period of time when he requested the raise. (SOF 12, 15).  As Plaintiff is unable to establish a *prima facie* case, his claims fail as a matter of law.

> **3.     Even if Plaintiff Could Establish a *Prima Facie* Case With Respect to His Denial of a Pay Raise Claims under Title VII or Section 1981, Defendant Has Articulated Legitimate, Non-Discriminatory Reason For the Employment Decision That Plaintiff Cannot Prove Is Pretext For Discrimination.**

Even if Plaintiff were able to prove a *prima facie* case of disparate treatment race discrimination base the denial of his request for a raise shortly after being promoted to Store Manager, Defendant has articulated a legitimate non-discriminatory reason for denying Plaintiff's request that he cannot prove to be pretext for discrimination.  Specifically, upon being promoted, Plaintiff was paid an amount commensurate with his qualifications within the pay range established for Store Managers, and Plaintiff had only been serving as Store Manager for a short period of time at the time he made his request. (SOF 12, 15, 29).

Plaintiff has adduced no evidence to suggest that the denial of his request for a raise was due to proscribed, intentional discrimination. He has not, and cannot, demonstrate that Defendant's reasons for denying Plaintiff's request were false, or otherwise shown that race discrimination motivated Defendant's decision. *Cooper v. Southern Co.*, 390 F.3d 695, 736 (11th Cir. 2004).

Indeed, the undisputed material facts reveal that both Caucasian and African American Store Managers were receiving higher salaries than Plaintiff at the time. (SOF 17-21, 29).  Moreover, at least one Caucasian Store Manager received the same starting salary as a Store Manager that Plaintiff received. (SOF 22-28).  These facts are fatal to Plaintiff's pretext argument.

     **D.**    **Plaintiff's Claims of Disparate Treatment Under Title VII and Section 1981 Based on Defendant's Not Assigning Plaintiff an Assistant Manager Fails As a Matter of Law.**

         **1.**    **Plaintiff's Title VII Disparate Treatment Claim Based on Defendant's Not to Assign an Assistant Manager to Plaintiff's Store is Barred Because It Was Not The Subject of a Timely Filed EEOC Charge.**

As noted with respect Plaintiff's Title VII disparate treatment claims based on alleged pay disparity and denial of a pay raise above in Sections I.B.1 and I.C.1., Plaintiff's Title VII disparate treatment claim based on Defendant's decision not to assign an Assistant Manager to Plaintiff's store is also barred because it was not the subject of a timely filed EEOC charge.  Such a claim is clearly outside the scope of Plaintiff's EEOC charge.  In any event, to the extent Defendant's decision occurred more than 180 days prior to the filing of Plaintiff's EEOC charge, a Title VII claim based on such conduct is time barred. Plaintiff's Title VII disparate treatment claim based on such conduct, therefore, fails as a matter of law.

         **2.**    **In any event, Plaintiff Cannot Establish a *Prima Facie* Case of Disparate Treatment In Its Failure to Assign an Assistant Manager.**

             **a.**    **Defendant's Conduct Was Not An Adverse Employment Action Actionable Under Title VII or Section 1981.**

As noted in section I.C.2. above, in order to establish a *prima facie* case of disparate treatment, Plaintiff must establish that he suffered an adverse employment action. *See Hinson v. Clinch Cty.*, 231 F.3d 821, 828 (11th Cir. 2000).  An adverse employment action results in a "serious

-24-

and material change in the terms, conditions, or privileges of employment." *Barrow v. Georgia Pacific Corp.,* 114 Fed. Appx. 54, 57 (11th Cir. 2005), *citing Davis v. Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). "A materially adverse employment action 'must be more than a mere inconvenience or an alteration of job responsibilities.'" *Greer v. Marco Warehousing*, 179 F. Supp.2d 1332, 1341 (M.D. Ala. 2001), *quoting Crady v. Liberty Nat'l Bank & Trust*, 993 F.2d 132, 136 (7th Cir. 1993). Plaintiff's subjective view of the significance and adversity of Defendant's act is not controlling; "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Plaintiff cannot establish that Defendant's decision not to assign an Assistant Manager to Plaintiff's store was an adverse employment action. It is cannot be disputed that Defendant's decision not to assign an Assistant Manager to Plaintiff's store did not result in a serious and material change in the terms and conditions of Plaintiff's employment. At most, it resulted in a mere inconvenience to Plaintiff. However, the facts indicate that Plaintiff was not inconvenienced at all because, although Defendant did not assign an Assistant Manager to Plaintiff, it made sure that help was available to Plaintiff when he needed it. (SOF 36). Accordingly, Plaintiff's claim of disparate treatment based on Defendant's decision not to assign an Assistant Manager to Plaintiff's store fails as a matter of law.

        **b.**        **Plaintiff Was Not Treated Less Favorably Than Similarly Situated Non-Protected Employees.**

Even if Defendant's conduct were considered an adverse employment action, Plaintiff's claim still fails as a matter of law because Plaintiff cannot prove that similarly situated non-protected employees were treated more favorably that he. Plaintiff was not assigned an Assistant Manager because his store had not reached the $120,000 in receivables threshold required to be assigned an

Assistant Manager. (SOF 35).  Plaintiff has not, and cannot, point to any Store Manager in his District whose store had less that $120,000 in receivables and was assigned an Assistant Manager. As such, Plaintiff cannot prove a *prima facie* case, and his claims should therefore be dismissed.

### 3.    Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated Legitimate, Non-Discriminatory Reasons For the Decision That Plaintiff Cannot Prove Are Pretext For Discrimination.

Defendant has articulated a legitimate non-discriminatory reason for its decision not to assign an Assistant Manager to Plaintiff's store.  Specifically, Plaintiff was never assigned an Assistant Manager at his store because Defendant's stores typically are not assigned an Assistant Manager until the store's receivables exceed $120,000[11], and the highest amount of receivables Plaintiff accrued was $107,000 at the Prattville store.  (SOF 35).

Plaintiff has adduced no evidence to suggest that Defendant's decision was due to proscribed, intentional discrimination. He has not, and cannot, demonstrate that Defendant's reason for not assigning an Assistant Manager to Plaintiff's store was false, or otherwise show that race discrimination motivated Defendant's decision.  It is clear that Defendant followed its normal practice in assigning Assistant Managers. (SOF 35).  Even so, Defendant made sure that help was available to Plaintiff if he needed it. (SOF 36).  Thus, even if Plaintiff were able to prove a *prima facie* case of discrimination based on Defendant's decision not to assign an Assistant Manager to Plaintiff's store, his claim still fails a matter of law because Defendant has articulated a legitimate, non-discriminatory reason for its action that Plaintiff cannot prove is pretext for discrimination. Accordingly, Plaintiff's disparate treatment claim based on such conduct fails as a matter of law.

---

[11]    The assignment of an Assistant Manager can also be impacted by lack of available employees to assign to a position and unexpected events affecting the Company's ability to staff a store properly. (SOF 35 n. 4).

**E.    Plaintiff's Claim of Disparate Treatment Based on His Demotion Fails As A Matter of Law.**

**1.    Plaintiff Cannot Establish a *Prima Facie* Case.**

In cases where an employee is demoted, the *prima facie* case requires Plaintiff to show that: (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; (3) similarly situated employees outside his protected classification were treated more favorably; and (4) he was qualified for his job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1310 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Here, Plaintiff cannot establish that he was treated less favorably than a similarly situated, non-minority employee.

To be deemed "similarly situated" for purposes of a *prima facie* case, the individuals with whom the plaintiff seeks to compare his treatment must have been "...involved in or accused of the same or similar conduct and ... disciplined in different ways". *Holifield v. Reno*, 115 F.3d at 1562; *see also Maniccia*, 171 F.3d at 1368 ("The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed"). The comparator's misconduct must be nearly identical to the Plaintiff's so the Court is not put in the position of "second guessing an employer's reasonable decisions and confusing apples with oranges." *Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001), *citing Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

Plaintiff is unable to establish that any other employee was involved in or accused of the same or similar misconduct as he and disciplined in a different manner. Plaintiff was demoted

-27-

because his store had a high number of past due accounts, his store had an extremely high "charge off" the prior month, his store was not making the profit that Defendant expected, he was not field chasing accounts properly, Defendant had received numerous customer complaints about Plaintiff, and Plaintiff's overall operation of the store was poor. (SOF 40). Plaintiff has not identified, and cannot identify, any non-protected Store Manager who engaged in similar conduct and was not demoted. His disparate treatment claim based on his demotion, therefore, fails as a matter of law and should be dismissed.

> **2.      Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated A Legitimate, Non-Discriminatory Reason For His Demotion That Plaintiff Cannot Prove is a Pretext for Discrimination.**

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination with respect to his demotion, Defendant has articulated a legitimate, non-discriminatory reason for the demotion. Specifically, Defendant demoted Plaintiff because his store had a high number of past due accounts, his store had an extremely high "charge off" the prior month, his store was not making the profit that Defendant expected, he was not field chasing accounts properly, Defendant had received numerous customer complaints about Plaintiff, and Plaintiff's overall operation of the store was poor. (SOF 40).

Plaintiff cannot prove that Defendant's proffered reason for his demotion is pretext for intentional race discrimination. The Eleventh Circuit has explained that:

> if an employer's proffered reason is "one that might motivate a reasonable employer," a plaintiff may not rely on merely questioning the wisdom of that reason to prove that it is a pretext for a discriminatory motive. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997). Rather, in order to survive a motion for summary judgment, a plaintiff must demonstrate that a reasonable factfinder would not find credible the employer's reasons for its actions because of their inherent "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." *Id.* at 1538 (citation and quotation marks omitted). Furthermore, an

analysis of pretext focuses on the employer's beliefs, "not the employee's own perceptions of his performance." *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)

*Jones v. United Space Alliance, L.L.C.*, 2006 WL 250761, *5 (11th Cir. 2006). Here, it is clear that Plaintiff cannot demonstrate that a reasonable factfinder would not find credible Defendant's reasons for Plaintiff's demotion. Moreover, the futility of Plaintiff's pretext argument is further supported by the fact that Plaintiff was aware of three other Store Managers who were also demoted. Two of three were Caucasian. (SOF 43). Plaintiff's disparate treatment claims based on the demotion must be dismissed.

> **3.     Plaintiff Cannot Prove Discriminatory Animus With Respect to His Demotion Because He Was Promoted and Demoted by the Same Decision Maker.**

Plaintiff's pretext argument is further negated by the fact that the same person, Dave Deal, was responsible for both Plaintiff's promotion and demotion. (SOF 12, 39-40). The Eleventh Circuit recognizes a permissible inference that no discriminatory animus motivated Defendant's actions where the same individual is responsible for taking a positive and negative employment action against an employee. *Williams v. Vitro Services Corp.,* 144 F.3d 1438, 1442-43 (11th Cir. 1998).[12] Here, it is undisputed that Dave Deal participated in the decision to promote Plaintiff and later made the decision to demote Plaintiff for poor performance. (SOF 12, 39-40). Accordingly, it is clear that no reasonable jury could conclude that discriminatory animus motivated Defendant's decision to demote Plaintiff. Defendant is therefore entitled to a judgment in its favor as a matter of law with respect of Plaintiff's demotion claim.

---

[12]     While *Williams* states that the permissible inference is a jury question, Defendant submits that no reasonable jury could ignore such an inference and conclude that discriminatory animus motivated Defendant's decision to demote Plaintiff.

II.    **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S CLAIMS OF HOSTILE WORK ENVIRONMENT UNDER TITLE VII AND SECTION 1981.**

A.    **Plaintiff's Title VII Hostile Work Environment Claim Fails As a Matter of Law Because It Was Not the Subject of a Timely Filed EEOC Charge.**

As noted with respect to several of Plaintiff's Title VII disparate treatment claims discussed above in Sections I.B.1, I.C.1., and I.D.1., Plaintiff's Title VII hostile work environment claim is also barred because it was not the subject of a timely filed EEOC charge. Such a claim is clearly outside the scope of Plaintiff's EEOC charge, which only addressed Plaintiff's demotion. In any event, to the extent Defendant's alleged conduct occurred more than 180 days prior to the filing of Plaintiff's EEOC charge, a Title VII claim based on such conduct is time barred. Plaintiff's Title VII hostile work environment claim based on such conduct, therefore, fails as a matter of law.

B.    **In any Event, Plaintiff Cannot Establish A Prima Facie Case of Hostile Work Environment Under Title VII or Section 1981.**

In order to establish a *prima facie* case of a racially hostile work environment under Title VII or Section 1981, Plaintiff must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment complained of was based on race; (4) the harassment created was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding Defendant liable. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003). Plaintiff cannot establish at least two of these required elements.

1.    **Plaintiff Cannot Establish That the Alleged Acts of Harassment Created a Hostile Work Environment.**

"Only when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an

-30-

abusive working environment,' is the law violated. *Barrow v. Georgia Pacific Corp.*, 144 Fed. Appx. 54, 56 (11th Cir. 2005)(quoting *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993)).  The allegedly abusive environment also must be both subjectively hostile or abusive from the perspective of the victim and objectively hostile or abusive from the perspective of the reasonable person.  *Harris*, 510 U.S. at 21.

Four factors are important in analyzing whether harassment objectively altered the terms and conditions of the employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Courts must consider the alleged conduct in context and cumulatively, looking at the totality of the circumstances. *Id.* at 1242.

Title VII, however, is not a federal civility code. *Mendoza,* 195 F.3d at 1245. Innocuous or boorish statements or other behavior that does not relate to the race of the actor or the employee are not actionable. *Id.* Additionally, teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. *Mendoza,* 195 F.3d at 1245.

It is not sufficient that Plaintiff merely highlight a couple of utterances of racial epithets as evidence of a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17,  21 (1993) ("As we pointed out in *Meritor,* mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." (internal quotation marks omitted)). Racial slurs must be "so common place, overt and denigrating that they created an atmosphere charged with racial hostility." *Edwards v. Wallace Community*

*College*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.,* 897 F.2d

1067, 1068 (11th Cir.1990)); *see also Smith v. Beverly Health & Rehabilitation Servs., Inc.*, 978 F.

Supp. 1116, 1122 (N.D. Ga. 1997) (holding that a supervisor's statement, in reference to an African

American employee and in his presence, that "all mooly can do is make coffee and bring it to me,"

and, outside the employee's presence, that "these Goddam Georgia niggers think they own Georgia,"

that "where I come from niggers know their place," and that one worker who sang while she worked

sounded like a slave on the plantation was not not sufficiently severe or pervasive to alter the

conditions of employment and create an abusive working environment).

   The only evidence that Plaintiff has been able to muster up to support his claim of a racially

hostile work environment is that Jack Bozeman told him that David Cox had used the "N" word and

that he said that he "hoped that black S.O.B. fails." (SOF 47-49). In addition, although Plaintiff

initially testified that Cox never used the "N" word in front of him, later in his deposition he

contradicted this testimony claiming that there "were a few occasions where" Cox used the "N"

word "in front of him." (SOF 47).[13]   Thus, there is no evidence that the alleged racial slurs were "so

common place, overt and denigrating that they created an atmosphere charged with racial hostility."

*Edwards*, 49 F.3d at 1521.   Moreover, Plaintiff acknowledged a cordial relationship with every other

manager with whom he worked and that he never heard racially derogatory language from any of

them. (SOF 6-11, 45, 52).   Accordingly, the alleged harassment was not sufficiently severe or

pervasive to alter the conditions of Plaintiff's employment. Plaintiff therefore cannot prove that he

was subjected to an abusive working environment. His race harassment claim, therefore, fails as a

---

   [13]   Plaintiff acknowledged that the first time he mentioned this to anyone was at his deposition. (SOF 47).

matter of law.

    **2.**      **Defendant Cannot Be Held Liable for Any Alleged Race Harassment Because Plaintiff Did Not Use Defendant's Procedures for Employees to Complain About Harassment.**

Even if Plaintiff were subjected to a racially hostile work environment, his harassment claims still fail as a matter of law because Plaintiff admits that he did not use available reporting procedures to report that he was suffering race harassment.  The Eleventh Circuit recently held that, under the *Faragher/Ellerth* defense, an employer may be relieved of liability if: (1) it disseminated an adequate anti-harassment policy, and (2) the victimized employee failed to report his harassment in compliance with the reporting policy. *Lepera v. Cagle's, Inc.*, 2006 WL 452071 at *1 (11th Cir. February 24, 2006)(citations omitted).  Here, it is undisputed that Defendant has an anti-harassment policy with procedures for its employees to report harassment, and that Plaintiff was aware of the policy. (SOF 51).  Moreover, Plaintiff admits that he never used Defendant's complaint procedures to report harassment in the prescribed manner by reporting the alleged harassment to the Chief Executive Officer. (SOF 51).  Accordingly, Plaintiff cannot prove a basis for holding Defendant liable for any alleged harassment.  His hostile work environment claim, therefore, fails as a matter of law.

III.   **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S RETALIATION CLAIMS UNDER TITLE VII AND SECTION 1981.**

A.   **Plaintiff's Title VII Retaliation Claim Fails As a Matter of Law Because It Was Not the Subject of a Timely Filed EEOC Charge.**

Plaintiff's Title VII retaliation claim is barred because it was not the subject of a timely filed EEOC charge. It is undisputed that Plaintiff filed only one EEOC charge in September 2004 based on his demotion, and Plaintiff did not file a subsequent EEOC charge alleging retaliation for engaging in protected activity.  Since, under Section 706 of Title VII, only those unlawful employment practices that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability, Plaintiff's retaliation claim fails as a matter of law. *City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002).

B.   **In Any Event, Plaintiff's Retaliation Claims Under Title VII and Section 1981 Fail As Matter of Law Because Plaintiff Cannot Prove a *Prima Facie* Case.**

In order to establish a *prima facie* case of retaliation, a plaintiff must prove that he: 1) engaged in protected activity; 2) suffered an adverse employment action; and 3) the adverse employment action was causally related to the protected activity. *Galloway v. GA Tech. Auth.*, 2006 WL 1327808 at *2 (11th Cir. May 16, 2006); *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002).

As noted above, an "adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, that deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000). "Whether an action is sufficient to constitute an adverse employment action

-34-

for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." *Id.* "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action[,]" and "Title VII[ ] is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238-39 (11th Cir.2001).

Here, Plaintiff bases his retaliation claims on two distinct incidents, neither of which affected the terms and conditions of his employment. First, Plaintiff alleges that, because Plaintiff had filed a lawsuit against the Company, Regional Manager Dave Deal chastised Plaintiff's manager for sending out an e-mail expressing concern for Plaintiff's health condition. (SOF 55). Plaintiff also alleges that his manager, David Cox, told him that if he dropped his lawsuit the Company might make him a manager, notwithstanding the fact that Cox had no authority to promote Plaintiff. (SOF 55). Neither of these incidents, either subjectively or objectively, rises to the level of conduct which could be considered an adverse employment action as neither altered his compensation, terms, conditions, or privileges of employment, deprived him of employment opportunities, or adversely affected his status as an employee. *Gupta*, 212 F.3d at 587. Plaintiff's retaliation claims should, therefore, be dismissed because Plaintiff cannot prove that he suffered any adverse employment action as a result of any protected activity on his part.

**C.     Assuming *Arguendo* That Plaintiff Could Prove A *Prima Facie* Case of Retaliation His Claim For Any Back Pay Fails As A Matter of Law Because Plaintiff Did Not Want to Be Promoted and Failed to Take the Steps Necessary to Be Promoted.**

As noted above, Cox had no authority to promote Plaintiff, so there was no adverse employment action. Nevertheless, to the extent Plaintiff may be asserting that he was not promoted in retaliation for protected activity, his claim fails because it is undisputed that in December 2005

-35-

Plaintiff refused to perform the prerequisites to being promoted back to Store Manager. (SOF 53).

Moreover, about that time Plaintiff told a co-worker, Gilbert Redd, that he did not want to be

promoted back to Store Manager (SOF 53), presumably because he is now earning as an Assistant

Manager the same salary that he earned as a Store Manager and is required to work fewer hours.

(SOF 53).  Therefore, at a minimum, Plaintiff's claim for any back pay should be cut off as of

December 2005.

## IV.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIMS.

### A.    Plaintiff's Negligent Supervision and Training, Negligent Retention, and Negligence Claims are Barred by the Exclusive Remedy Provision of the Alabama Workers' Compensation Act.

Plaintiff's state law claims of negligent supervision and training, negligent retention, and

negligence should be dismissed as a matter of law because such claims are barred by the exclusive

remedy provision of the Alabama Workers' Compensation Act, 1975 Ala. Code § 25-5-14.  "The

Alabama Workers' Compensation Act preempts all causes of action against an employer under state

law based on negligent harm inflicted on an employee by a co-employee." *Norman v. Southern*

*Guaranty Ins. Co*, 191 F. Supp.2d 1321, 1136-37 (M.D. Ala. 2002)(dismissing the plaintiff's claims

of negligent training and supervision, negligent retention, and negligence against employer).

Therefore, all of Plaintiff's negligence-based claims should be dismissed.

### B.    In any Event, Plaintiff's Negligence-Based Claims Should Be Dismissed As A Matter of Law On Their Merits.

Even if Plaintiff's negligent training and supervision, negligent retention, and negligence

claims were not preempted, they should still be dismissed as a matter of law.  Alabama recognized

a cause of action for negligent training or supervision in *Big B, Inc. v. Cottingham,* 634 So.2d 999,

-36-

1002-03 (Ala.1993). According to that court, "liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge." *Id.* at 1003 (quoting *Lane v. Central Bank of Alabama, N.A.,* 425 So.2d 1098, 1100 (Ala.1983)). Evidence of this actual or constructive knowledge may consist of specific acts of incompetency brought to the master's attention or a pattern of incompetent acts such that the character, frequency, and seriousness of the acts must have brought the incompetency to the master's attention in the exercise of due care. *Id.* A plaintiff must also show that the above breach of the employer's duty to reasonably supervise his or her employees proximately caused the plaintiff's injury. *Keel v. Banach,* 624 So.2d 1022, 1026 (Ala.1993) (stating that there are four elements of negligence in Alabama: (1) a duty; (2) breach of the duty; (3) proximate cause; and (4) injury arising therefrom).

The only wrongs in this case are those involving alleged affirmative discrimination or retaliation under Title VII and Section 1981. Based on this view of the alleged wrongs, for a negligent supervision and training claim to exist regarding these alleged failures, Defendant must or should have known of its employees' propensity to *intentionally discriminate or retaliate* against an employee taking advantage of the protections of those statutes. *Norman*, 191 F. Supp.2d at 1337. Plaintiff has not alleged a continuing pattern of violations, nor, indeed, any prior discrimination or retaliation, such that the Company should have been aware of the problem. *Id.* Even if there was evidence that would put Defendant on notice, there is no proof that any negligent training and supervision caused the alleged injuries in this case. *Id.*

For substantially similar reasons, summary judgment should also be entered for Defendant

on Plaintiff's negligent retention claim. An employer "must use due care to avoid the . . . retention

of an employee whom [the employer] knows or should know is a person unworthy, by habits,

temperament, or nature, to deal with the persons [he will be in contact with during his

employment]."*Brown v. Vanity Fair Mills,* 291 Ala. 80, 277 So.2d 893, 894 (1973). To recover for

negligent retention in Alabama, a plaintiff must show breach of the employer's above duty and that

such breach proximately caused the plaintiff's injury. *Id.* There is no evidence of such actual or

constructive knowledge, nor is there an adequate causal link between this alleged breach and the

injury. *Norman*, 191 F. Supp.2d at 1337-38.  Accordingly, Plaintiff's negligence-based claims

should be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant is entitled to judgment in its favor as a matter of law,

and Plaintiff's Complaint should, therefore, be dismissed in its entirety.

Respectfully submitted,

LEWIS FISHER HENDERSON
CLAXTON & MULROY, LLP
6410 Poplar Avenue, Suite 300
Memphis, Tennessee 38119
Telephone (901) 767-6160
Facsimile (901) 767-7411

By:    /s/James R. Mulroy, II
       James R. Mulroy, II (TN Bar No. 000098)
       jrmulroy@lfhc.com
       Kelly S. Gooch (TN Bar No. 14325)
       kellyg@lfhc.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 23rd day of May, 2006, electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Maricia Woodham, Esq.
> Sabel & Sabel, PC
> 2800 Zelda Road, Suite 100-5
> Montgomery, Alabama 36106

/s/ James R. Mulroy, II